NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 25-1159

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

THE PEOPLE OF THE STATE OF MICHIGAN,
*Petitioner*,

v.

UNITED STATES DEPARTMENT OF ENERGY, et al.,
*Respondents*.

Petition for Review of United States Department of Energy Order No. 202-25-3

**RESPONSE IN OPPOSITION TO MARYLAND OFFICE OF PEOPLE'S COUNSEL MOTION TO INTERVENE**

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

ROBERT N. STANDER
*Deputy Assistant Attorney General*

ROBERT LUNDMAN
REBECCA JAFFE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice
Post Office Box 7415
Washington, D.C. 20044
(202) 598-0402
rebecca.jaffe@usdoj.gov

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A.     Parties and Amici

Petitioner in case no. 25-1159 is the State of Michigan.  Petitioners in case no. 25-1160 are Sierra Club, Natural Resources Defense Council, Michigan Environmental Council, Environmental Defense Fund, Environmental Law and Policy Center, Vote Solar, Public Citizen, Union of Concerned Scientists, the Ecology Center, and Urban Core Collective.  Petitioners in case no. 25-1162 are the States of Minnesota and Illinois.

Respondents are Chris Wright, Secretary of the United States Department of Energy, and the United States Department of Energy.

The Maryland Office of People's Counsel has moved to intervene in support of Petitioner Michigan.  The Midcontinent Independent System Operator (MISO) has moved to intervene.

The Consumers Energy Company intends to file an amicus brief in support of neither party.

### B.     Rulings Under Review

Petitioners challenge Department of Energy Order No. 202-25-3, which was issued on May 23, 2025.

### C.     Related Cases

Under Circuit Rule 28(a)(1)(C), there are no related cases.

ii

/s/ *Rebecca Jaffe*
REBECCA JAFFE

Counsel for Federal Respondents

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES .................................................................................................. ii

TABLE OF CONTENTS ............................................................................... iv

TABLE OF AUTHORITIES ............................................................................ v

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 1

I.    Statutory Background ........................................................................... 1

    A.    Emergency authority under the Federal Power Act .............. 1

    B.    Judicial review of emergency orders ..................................... 2

II.    Factual Background ............................................................................. 2

    A.    May 23, 2025, Emergency Order No. 202-25-3 .................... 2

    B.    Rehearing petitions before the Department of Energy .......... 4

    C.    Procedural background ........................................................... 5

ARGUMENT ................................................................................................... 6

The Maryland Office of People's Counsel has not shown that it is aggrieved. ............................................................................................. 6

CONCLUSION ................................................................................................ 9

CERTIFICATE OF COMPLIANCE ............................................................. 11

## TABLE OF AUTHORITIES

### Cases

*Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*,
    458 U.S. 592 (1982)..................................................................................8

*Am. Libr. Ass'n v. F.C.C.*,
    401 F.3d 489 (D.C. Cir. 2005).................................................................9

*Clean Wisconsin v. E.P.A.*,
    964 F.3d 1145 (D.C. Cir. 2020).............................................................8

*Delaware Dep't of Nat. Res. & Env't Control v. E.P.A.*,
    785 F.3d 1 (D.C. Cir. 2015)....................................................................7

*Env't Integrity Project v. Pruitt*,
    709 F. App'x 12 (D.C. Cir. 2017)..........................................................6

*Exxon Co., U.S.A. v. FERC*,
    182 F.3d 30 (D.C. Cir. 1999)..................................................................6

*First Nat. Oil, Inc. v. FERC*,
    102 F.3d 1094 (10th Cir. 1996)..............................................................7

*Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*,
    142 F.4th 757 (D.C. Cir. 2025)..............................................................6

*Maryland People's Couns. v. FERC*,
    760 F.2d 318 (D.C. Cir. 1985)................................................................8

*Old Dominion Elec. Coop. v. FERC*,
    892 F.3d 1223 (D.C. Cir. 2018).........................................................6, 9

*OXY USA, Inc. v. FERC*,
    64 F.3d 679 (D.C. Cir. 1995)..................................................................6

*Pub. Serv. Comm'n of Kentucky v. FERC*,
    397 F.3d 1004 (D.C. Cir. 2005).............................................................7

*Sierra Club v. E.P.A.*,
   292 F.3d 895 (D.C. Cir. 2002) ............................................................................. 8, 9

*Thole v. U. S. Bank N.A*,
   590 U.S. 538 (2020) .................................................................................................. 7

**Statutes**

16 U.S.C. § 824a(c)(1) ...................................................................................... 1, 2

16 U.S.C. § 825*l*(a) ...................................................................................... 2, 6, 8

16 U.S.C. § 825*l*(b) .............................................................................................. 2

# INTRODUCTION

The Maryland Office of People's Counsel moves to intervene to challenge a Department of Energy order requiring a power plant in Michigan to continue operating. The Maryland Office of People's Counsel has not shown that it is an aggrieved party, as it is required to do under the Federal Power Act. Maryland apparently contends that operating the plant in Michigan will lead to increased electricity prices in Maryland. This allegation is not self-evident and appears implausible because Maryland is located within a different regional electric grid system than Michigan. The Maryland Office of People's Counsel bears the burden of showing it is aggrieved, and it has not met that burden.

# BACKGROUND

## I.      Statutory Background

### A.      Emergency authority under the Federal Power Act

Section 202(c) of the Federal Power Act gives the Department of Energy authority to order temporary operation of power facilities during emergencies. 16 U.S.C. § 824a(c)(1). During war or "whenever" the Department of Energy "determines that an emergency exists by reason of a sudden increase in the demand for electric energy, or a shortage of electric energy or of facilities for the generation or transmission of electric energy, or of fuel or water for generating facilities, or other causes," the Department "shall have authority" to require "such

1

temporary connections of facilities and such generation, delivery, interchange, or transmission of electric energy as in its judgment will best meet the emergency and serve the public interest." 16 U.S.C. § 824a(c)(1).

### B. Judicial review of emergency orders

Under Section 313 of the Federal Power Act, "[a]ny person, electric utility, State, municipality, or State commission aggrieved by" an emergency order issued in a proceeding to which such entity is a party "may apply for a rehearing within thirty days" after the order issues. 16 U.S.C. § 825*l*(a). "Unless" the Department "acts upon the application for rehearing within thirty days after it is filed, such application may be deemed to have been denied." 16 U.S.C. § 825*l*(a). No proceeding to review an emergency order "shall be brought by any entity unless such entity shall have made application to the [Department] for a rehearing thereon." 16 U.S.C. § 825*l*(a).

A party to a proceeding under this emergency authority and aggrieved by an emergency order may seek review in the courts of appeals within 60 days after the Department issues an order on the rehearing application. 16 U.S.C. § 825*l*(b).

## II. Factual Background

### A. May 23, 2025, Emergency Order No. 202-25-3

On May 23, 2025, the Secretary of the Department of Energy, Chris Wright, issued Order No. 202-25-3 under Section 202(c) of the Federal Power Act. Order

at 3. In the May 23, 2025, Order, the Secretary determined that an emergency exists in portions of the Midwest "due to a shortage of electric energy, a shortage of facilities for the generation of electric energy, and other causes." Order at 1. The Secretary noted that the Midcontinent Independent System Operator (MISO, the electric grid operator for the central United States, including Michigan) faced potential tight reserve margins during the summer of 2025, particularly during periods of high demand or low electricity generation. Order at 1. Reserve margins are the extra generating capacity a power system has available to ensure reliability. The Secretary cited the North American Electric Reliability Corporation's 2025 Summer Reliability Assessment, which indicated that MISO was at elevated risk for shortfalls, particularly in August. Order at 1. In addition, new electricity generation additions were insufficient to offset various negative impacts, such as plant retirements. Order at 2.

The Secretary noted that multiple generation facilities in Michigan had retired in recent years, including about 2,700 megawatts of coal-fired generating capacity, a nuclear power plant that shut down in 1997, and another nuclear power plant that closed in 2022. Order at 1.

The 1,560 megawatt J.H. Campbell coal-fired power plant in Michigan was scheduled to stop operating on May 31, 2025—years before the end of its scheduled design life. Order at 1. The plant's retirement would further decrease

3

available dispatchable generation capacity within the region. Order at 1. Dispatchable generation capacity means that a plant can produce electricity on demand, unlike non-dispatchable sources, such as wind or solar, that depend on weather. Dispatchable capacity was insufficient and there could be power losses to homes and businesses, posing risks to public health and safety. Order at 2.

The Secretary determined that the Campbell Plant was necessary to address the energy emergency, including ensuring the MISO system's reliability and ability to dispatch electricity as necessary. Order at 2.

The Secretary directed MISO and the Campbell Plant's owner to "take all measures necessary to ensure that the Campbell Plant is available to operate." Order at 2 ¶ A. He also directed MISO to "take every step to employ economic dispatch of the Campbell Plant to minimize costs to ratepayers." Order at 2 ¶ A.

Before the May 23, 2025, Order expired at midnight on August 21, 2025, Order at 3 ¶ H, the Secretary issued a second order on August 20, 2025 (Order No. 202-25-7) directing the Campbell Plant to continue operating.

B.   **Rehearing petitions before the Department of Energy**

On June 18, 2025, a coalition of public interest organizations moved to intervene and petitioned the Department of Energy for rehearing and a stay of the May 23, 2025, Order.[1] That same day, the Michigan Attorney General also moved

---

[1] The public interest organizations were Sierra Club, Natural Resources Defense Council, Michigan Environmental Council, Environmental Defense Fund,

4

to intervene and sought rehearing. On June 23, 2025, Minnesota and Illinois moved jointly to intervene and petitioned the Department for rehearing. The Maryland Office of People's Counsel also moved to intervene in support of the rehearing requests filed by the public interest organizations and the Michigan Attorney General.

On July 28, 2025, the Department issued an order noting that thirty days have passed since the rehearing requests were filed and, therefore, the rehearing requests were deemed denied by operation of law.

## C. Procedural background

On July 24, 2025, the Michigan Attorney General petitioned the Court to review the May 23, 2025, Order. Case No. 25-1159. That same day, the public interest organizations petitioned the Court to review the May 23, 2025, Order. Case No. 25-1160. On July 25, 2025, Minnesota and Illinois petitioned the Court to review the May 23, 2025, Order. Case No. 25-1162. The Court consolidated the three cases on its own motion.

On August 25, 2025, the Maryland Office of People's Counsel moved to intervene in support of Petitioner Michigan. The Office of People's Counsel said that it represents residential ratepayers of utility services in Maryland. It claimed

---

Environmental Law and Policy Center, Vote Solar, Public Citizen, Union of Concerned Scientists, the Ecology Center, and Urban Core Collective.

5

that it has standing to intervene because the litigation "will have a material financial impact on Maryland residential ratepayers." Mot. 3.

## ARGUMENT

**The Maryland Office of People's Counsel has not shown that it is aggrieved.**

To intervene as a party, the Maryland Office of People's Counsel must show that it is "aggrieved" by the May 23, 2025, Order.[2] 16 U.S.C. § 825*l*(a)–(b). The Court "use[s] traditional standing principles to determine if a party is indeed aggrieved." *Exxon Co., U.S.A. v. FERC*, 182 F.3d 30, 43 (D.C. Cir. 1999). To establish standing, the Maryland Office of People's Counsel must show (1) that it has suffered an "injury in fact," (2) that the injury was caused by the May 23, 2025, Order, and (3) that the injury would likely be redressed by the requested

---

[2] This Court has held that an entity—including a state—moving to intervene must establish its standing, regardless whether it is seeking the same or different relief from an existing party. *Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018) ("Intervenors become full-blown parties to litigation, and so all would-be intervenors must demonstrate Article III standing."); *see also Env't Integrity Project v. Pruitt*, 709 F. App'x 12, 13 (D.C. Cir. 2017) (applying the requirement for intervenors to show standing to North Dakota). The Court recently questioned that position. *See Institutional S'holder Servs., Inc. v. Sec. & Exch. Comm'n*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (noting that intervenors seeking the same relief as an existing party need not show standing, but recognizing "tension with some of our court's precedent" and not resolving the question because the intervenor at issue "plainly must establish its own standing to press this appeal"). Regardless of whether the Maryland Office of People's Counsel must establish standing, it must show that it is an aggrieved party. 16 U.S.C. § 825*l*(a)–(b). And the inquiry is essentially the same. *OXY USA, Inc. v. FERC*, 64 F.3d 679, 696 (D.C. Cir. 1995) ("We evaluate aggrievement by reference to traditional principles of standing.").

6

judicial relief.  *Thole v. U. S. Bank N.A*, 590 U.S. 538, 540 (2020).  Maryland "bears the burden of alleging facts sufficient to prove a concrete, perceptible harm of a real, non-speculative nature."  *First Nat. Oil, Inc. v. FERC*, 102 F.3d 1094, 1096 (10th Cir. 1996).  The Maryland Office of People's Counsel has not met that burden here.  It has not shown how the May 23, 2025, Order caused it any injury.

The May 23, 2025, Order applies to the Campbell Plant in Michigan—not to a plant in Maryland and not even to a plant in the same electricity grid region as Maryland.  The Campbell plant in Michigan is part of MISO, which "is a regional transmission organization (RTO)—a company that combines multiple power grids into a single transmission system."  *Pub. Serv. Comm'n of Kentucky v. FERC*, 397 F.3d 1004, 1006 (D.C. Cir. 2005).  Independent system operators are "electricity grid managers" that are "responsible for ensuring electric reliability within their regions of responsibility."  *Delaware Dep't of Nat. Res. & Env't Control v. E.P.A.*, 785 F.3d 1, 11 (D.C. Cir. 2015).  MISO's region covers all or part of 15 states (Montana, North Dakota, South Dakota, Minnesota, Iowa, Wisconsin, Michigan, Indiana, Illinois, Missouri, Kentucky, Arkansas, Mississippi, Louisiana, and Texas), plus Manitoba province in Canada.  https://perma.cc/88DS-NBKA.

Importantly, MISO's territory does not include Maryland.  Maryland is part of the PJM Independent System Operator's region.  PJM covers all or part of 13 states (Delaware, Illinois, Indiana, Kentucky, Maryland, Michigan, New Jersey,

7

North Carolina, Ohio, Pennsylvania, Tennessee, Virginia and West Virginia), plus the District of Columbia. https://perma.cc/LWS8-J4WR.

The Maryland Office of People's Counsel acknowledges in its motion that Maryland is part of the PJM Independent System Operator, but nonetheless claims injury from the May 23, 2025, Order because it says MISO and PJM are interconnected and Maryland ratepayers will allegedly pay higher costs because of the May 23, 2025, Order. Mot. 3. The Maryland Office of People's Counsel did not plausibly explain or demonstrate how Maryland residential ratepayers would be injured by a Michigan plant—which is located within a different Independent System Operator—remaining open and continuing to generate electricity.[3]

The alleged injury to Maryland residential ratepayers is not self-evident. Standing can be "self-evident," for example, "if the complainant is an object of the action (or forgone action) at issue." *Sierra Club v. E.P.A.*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) (cleaned up). Maryland's theory appears implausible. The May

---

[3] Ordinarily, states lack "standing as parens patriae to bring an action against the Federal Government." *Alfred L. Snapp & Son, Inc. v. P.R. ex rel. Barez*, 458 U.S. 592, 610 n.16 (1982). "In other words, state governments cannot sue the federal government on behalf of their injured state citizens." *Clean Wisconsin v. E.P.A.*, 964 F.3d 1145, 1158 (D.C. Cir. 2020). But the Federal Power Act lists "State[s]" and "State Commission[s]" as potential aggrieved parties. 16 U.S.C. § 825*l*(a). This Court held—in interpreting identical review provisions in the Natural Gas Act—that this judicial review provision "was evidently designed to recognize precisely the interest of the states in protecting their citizens in this traditional governmental field of utility regulation—that is, the states' parens patriae interest." *Maryland People's Couns. v. FERC*, 760 F.2d 318, 321 (D.C. Cir. 1985).

8

23, 2025, Order is not directed at the Maryland Office of People's Counsel, at a plant in Maryland, or even at the Independent System Operator (PJM) of which Maryland is a part. And the Maryland Office of People's Counsel acknowledges that MISO is a "net-importer" of energy from the PJM Independent System Operator. Mot. 3. Because of these facts, the Maryland Office of People's Counsel had "*good reason to know that [its] standing is not self-evident.*" *Am. Libr. Ass'n v. F.C.C.*, 401 F.3d 489, 493 (D.C. Cir. 2005) (emphasis in original).

"[A] petitioner"—and presumably a proposed intervenor—"whose standing is not self[-]evident should establish its standing by the submission of its arguments and any affidavits or other evidence appurtenant thereto at the first appropriate point in the review proceeding." *Sierra Club v. E.P.A.*, 292 F.3d 895, 900 (D.C. Cir. 2002). The "first appropriate point," *id.*, for a proposed intervenor to demonstrate standing is its motion to intervene, *cf. Old Dominion Elec. Coop. v. FERC*, 892 F.3d 1223, 1232 (D.C. Cir. 2018). Maryland did not do so here. Intervention must be denied unless and until Maryland meets its burden to establish increased costs to Maryland residential ratepayers somehow caused by the May 23, 2025, Order directing a Michigan power plant to remain open and produce more energy for consumers.

## CONCLUSION

For these reasons, Maryland's motion to intervene should be denied.

9

Respectfully submitted,

/s/ *Rebecca Jaffe*
ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*
ROBERT N. STANDER
*Deputy Assistant Attorney General*
ROBERT LUNDMAN
REBECCA JAFFE
*Attorneys*
Environment and Natural Resources Division
U.S. Department of Justice

*Counsel for Federal Respondents*

September 4, 2025
90-13-5-17962

10

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) this document contains 2,238 words.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

/s/ *Rebecca Jaffe*
REBECCA JAFFE
Counsel for Federal Respondents